301 P.2d 560

Harold E. BEST and Earl Craig, Plaintiffs and Respondents,

v.

BIG JIM MINING COMPANY, a Nevada Corporation, Defendant and Appellant.

No. 8438.

Supreme Court of Utah.

Sept. 24, 1956.

Irwin Arnovitz, Salt Lake City, Lawrence W. Steinberg, Beverly Hills, Cal., for appellant.

Holbrook, Baucom & Wilkins, Salt Lake City, for respondents.

WORTHEN, Justice.

Appeal from a judgment, entered in an action tried to the court, adjudging that defendant had abandoned the assignment of a lease and enterprise with regard to a piece of mining property and had committed a forfeiture thereunder.

On the 5th day of June, 1953, plaintiff Harold E. Best obtained a mineral lease from the state of Utah, covering a school section for the mining of uranium and vanadium. The lease provided that actual operations upon the land be commenced

before December 31, 1953, and that the property be diligently operated thereafter.

On or about July 17, 1953, Harold E. Best and Herman Stern, acting for Big Jim Mining Corporation, a Nevada corporation to be formed, entered into an assignment agreement. The consideration for the assignment from Best to defendant is set out in the agreement as follows:

"The assignee will pay to the assignor 16½% of the gross mill receipts after first deducting from the gross mill receipts 12½% of said mill receipts, which said 12½% is paid to the State of Utah as part of the rent for said leasehold. The assignee will further pay to the assignor 16½% of all bonuses after first deducting 12½% of said bonuses which said 12½% must be paid to the State of Utah as further rental for said leasehold.

"Assignee promises to have a licensed surveyor survey the aforementioned leasehold immediately. If the eastern boundary of said leasehold either intersects or is on the line where present mine wall of deepest penetration westerly ends, the assignee will pay to the assignor the sum of $5500.00 if the survey shows that the eastern line is westerly of the present mine wall of deepest westerly penetration then the assignee has the right to wait until it has received the Atomic Energy

Commission drill report of uranium and vanadium of said leasehold and only if the report is satisfactory must the assignee pay the assigner $5500.00.

"The assignee at all times has the right to abandon said mine and retain all the equipment thereon except as forbidden by the said laws of Utah. In the event of the abandonment of said mine, assignee must reassign said lease to assignor.

\* \* \* \* \* \*

"Assignee promises to commence operations, weather conditions permitting, as soon as reasonable."

At the time the said agreement was entered into a tunnel had been driven toward the East boundary of said Section 16; neither party to the agreement knew whether the tunnel penetrated said Section 16; a survey was made as provided by said agreement which disclosed that the tunnel did not penetrate said Section 16, and under the agreement defendant had no obligation to pay the $5,500 before the drill report of the A.E.C. was received. Said report failed to reveal the presence of uranium and vanadium ores in such quantity and quality that defendant deemed the same satisfactory to justify further development at that time and it refused to pay to plaintiffs the said sum of $5,500.

It is disclosed that plaintiffs had limited capital and sought the assistance of de-

5 Utah 2d—20

fendant for the purpose of developing and mining said Section 16 for commercial ore bodies. Plaintiffs were under obligation to the Utah State Land Board to commence actual operations upon the land on or before December 31, 1953, and to diligently operate the property thereafter. Defendant knew of the conditions and obligations contained in the lease and had the duty to either perform in accordance with the lease or to abandon said property as contemplated by the assignment.

Under the agreement defendant promised to commence operations, weather conditions permitting, as soon as reasonable.

The record discloses that after defendant received the A.E.C. report that it felt that the expenditure of money to develop the property was not justified. The defendant sought to dispose of its interest under the assignment but did not intend to develop the property with its own capital. The trial court found that defendant abandoned the property ("Mine") and there is ample evidence to support the finding.

Numerous demands were made by plaintiffs for the reassignment of the lease after the report of the A.E.C. contemplated by the agreement but defendant declined to comply with such demands and took the position that it had no obligation under the agreement to either mine or develop the property, but had only the obligation to pay rentals to the state of Utah to keep the lease alive.

The trial court found that under the terms of the lease from the state of Utah and the assignment agreement defendant was bound to undertake development work with reasonable diligence.

We are satisfied that the findings and judgment of the trial court are supported by the record.

Judgment affirmed, costs to respondents.

McDONOUGH, C. J., and CROCKETT, HENRIOD and WADE, JJ., concur.